UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

MARTIN LUTHER TEXADA (#399339)     CIVIL ACTION

VERSUS

JAMES M. LeBLANC, ET AL.           NO. 14-0596-JJB-EWD

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on August 18, 2016.

ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MARTIN LUTHER TEXADA (#399339)**        **CIVIL ACTION**

**VERSUS**

**JAMES M. LeBLANC, ET AL.**        **NO. 14-0596-JJB-EWD**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

This matter comes before the Court on the parties' cross-motions for summary judgment (R. Docs. 43 and 44).

*Pro se* Plaintiff, an inmate incarcerated at the Louisiana State Penitentiary ("LSP"), Angola, Louisiana, filed this action pursuant to 42 U.S.C. § 1983 against Secretary James M. LeBlanc, Ass't Warden Robert Butler, former Warden Burl Cain, and Ass't Warden Leslie Dupont, complaining that he was subjected to unconstitutional conditions of confinement when he was housed in a "booth cell" at Camp J at LSP, where ventilation was allegedly inadequate and where extreme heat presented a substantial risk of serious harm.  In addition, Plaintiff complained that (1) the Camp J exercise yards were uncovered and exposed to the sun, (2) that no ice water or coolers were provided on the exercise yards, and (3) that poorly trained "tier walkers" or "inmate guards" were assigned to his cell tier and presented a danger to themselves and to inmates on the tiers.  Pursuant to earlier Magistrate Judge's Report in this case, approved by the District Judge on June 3, 2015, *see* R. Docs. 19 and 21, all of Plaintiff's claims have been dismissed except his claim regarding exposure to excessive heat and inadequate ventilation in his booth cell at LSP.

Plaintiff moves for summary judgment relying upon the pleadings, photographs of a "booth cell" and a "booth tier" at LSP, photographs of a "death row" tier at LSP, excerpts from

Penitentiary Directive No. 10.013 re: the "Camp J Management Program," a copy of a letter written by Plaintiff to Warden Burl Cain dated September 26, 2013, a copy of an "Emergency 'ARP'" prepared by Plaintiff dated September 26, 2013, and Plaintiff's sworn "Declaration," provided under penalty of perjury in accordance with 28 U.S.C. § 1746.

Defendants move for summary judgment relying upon the pleadings, a Statement of Undisputed Facts, certified copies of the LSP Camp J Air and Water Temperature Logs for the dates January 5, 2013 to September 5, 2015, a certified copy of the LSP Camp J Gar 1 and 2 Unit Logbook for the dates September 25 to October 10, 2013, copies of the LSP Camp J Gar 1 and 2 Unit Shower Rosters for the dates September 26 to October 9, 2013, a certified copy of a Standards Compliance Reaccreditation Audit undertaken by the Commission on Accreditation for Corrections of the Louisiana Department of Public Safety and Corrections dated August 26-28, 2013, a copy of a disciplinary report dated September 25, 2013, charging Plaintiff with "Contraband," a copy of Plaintiff's Location Sheet, certified copies of Plaintiff's pertinent administrative records and medical records, and the affidavits of Jimmy Smith, Dr. Randy Lavespere and defendant Robert Butler.

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Rule 56, Federal Rules of Civil Procedure. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). A party moving for summary judgment must inform the Court of the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show that there is no such genuine issue of material fact. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. If the moving party carries its burden of proof under Rule 56,

the opposing party must direct the Court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, *supra*, 477 U.S. at 248. This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, *supra*, 477 U.S. at 323. Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party. *Little v. Liquid Air Corp.*, *supra*, 37 F.3d at 1075. In resolving a motion for summary judgment, the Court must review the facts and inferences in the light most favorable to the non-moving party, and the Court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes. *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

As pertinent to the claim remaining before the Court, Plaintiff alleges in his Complaint, as amended, that on September 26, 2013, he submitted an "emergency" administrative grievance to prison officials, "concerning the extreme heat [he] was suffering from inside a booth cell" at the Camp J Gar Unit at LSP. He further asserted that it was a "custom, practice, and policy" at LSP to subject inmates "to extreme suffering in 100 degree heat in buildings with little ventilations and no fans, or air flow into booths." He prayed for injunctive relief in the form of the installation of air conditioning on the Camp J units. In an Amended Complaint filed in May, 2015 (R. Doc. 20), Plaintiff added a claim for compensatory and punitive damages and made clear that he was suing

Defendants in both their individual and official capacities.

In response to Plaintiff's Complaint, Defendants first seek dismissal of Plaintiff's claim asserted against them in their official capacity for monetary damages. In this regard, Defendants are correct that § 1983 does not provide a federal forum for a litigant who seeks monetary damages against either a state or its officials acting in their official capacities, specifically because these officials are not seen to be "persons" within the meaning of § 1983. *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). In addition, in *Hafer v. Melo*, 502 U.S. 21 (1991), the United States Supreme Court addressed the distinction between official capacity and individual capacity lawsuits and made clear that a suit against a state official in an official capacity for monetary damages is treated as a suit against the state and is therefore barred by the Eleventh Amendment. *Id.* at 25. Accordingly, Plaintiff's claim asserted against Defendants in their official capacities for monetary damages is subject to dismissal. In contrast, Plaintiff's claim for monetary damages asserted against Defendants in their individual capacities remains viable because a claim against a state official in an individual capacity, seeking to impose personal liability for actions taken under color of state law, is not treated as a suit against the state. *Id.* at 29. In addition, a claim for injunctive relief asserted against state officials in their official capacities is not barred by the Eleventh Amendment because such a claim is not seen to be a claim asserted against the State. *See Will v. Michigan Department of State Police, supra*, 491 U.S. at 71 n. 10; 15 Am. Jur. 2d *Civil Rights* § 101.

In addition to the foregoing, the Court further agrees with Defendants that Plaintiff is not entitled to recover compensatory damages from Defendants in this case in any event. Specifically, pursuant to 42 U.S.C. § 1997e(e), "[n]o Federal civil action may be brought by a prisoner ... for mental or emotional injury suffered while in custody without a prior showing of

physical injury." Plaintiff does not suggest in his Complaint that he has suffered any physical injury as a result of the events alleged. Accordingly, he is precluded from the recovery of compensatory damages and would be limited to a recovery of nominal damages if successful. Whereas he might still be able to recover punitive damages, *see Hutchins v. McDaniels*, 512 F.3d 193, 198 (5th Cir. 2007), he would be required to make a showing that Defendants violated his constitutional rights with "evil intent" or "callous indifference." *See Allen v. Stalder*, 201 Fed. Appx. 276 (5th Cir. 2006), *citing Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).

Turning to Plaintiff's claims asserted against Defendants in their individual capacities, the Court next addresses Defendants' assertion that they are entitled to qualified immunity in connection with Plaintiff's claims. Specifically, Defendants contend that Plaintiff's allegations and evidentiary showing fail to show the existence of a genuine issue of disputed fact relative to Defendants' participation in any violation of Plaintiff's constitutional rights.

The qualified immunity defense is a familiar one and, employing a two-step process, operates to protect public officials who are performing discretionary tasks. *Huff v. Crites*, 473 Fed. Appx. 398 (5th Cir. 2012). Taking the facts as alleged in the light most favorable to Plaintiff, the Court considers whether Defendants' conduct violated Plaintiff's constitutional rights and whether the rights allegedly violated were clearly established at the time that the violation occurred. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (concluding that the rigid protocol mandated in *Saucier v. Katz*, 533 U.S. 194 (2001) – that called for consideration of the two-pronged analysis in a particular order – should not be "regarded as an inflexible requirement"). Under *Pearson v. Callahan*, courts have discretion to decide which of the two prongs of the analysis to address first. This inquiry, the Court stated, is undertaken in light of the specific context of the case, not as a broad, general proposition. *Saucier v. Katz, supra*, 194 U.S. at 201.

The relevant, dispositive inquiry in determining whether a constitutional right was clearly established is whether it would have been clear to a reasonable state official that his conduct was unlawful in the situation that he confronted. *Id.* at 202. The assertion of the qualified immunity defense alters the summary judgment burden of proof. *Michalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005). Once a defendant pleads qualified immunity, the burden shifts to Plaintiff, who "must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct." *Gates v. Texas Department of Protective and Regulatory Services*, 537 F.3d 404, 419 (5th Cir. 2008), *citing Michalik v. Hermann, supra*, 422 F.3d at 262.

Undertaking the qualified immunity analysis with respect to Plaintiff's claims, the Court concludes that Defendants' motion for summary judgment should be granted, dismissing Plaintiff's claims asserted against them in this case, and that Plaintiff's motion for summary judgment should be denied.

Plaintiff's claim that he was subjected to unconstitutional conditions of confinement in his Camp J housing unit, commencing in September, 2013, implicates the Eighth Amendment to the United States Constitution and its prohibition against cruel and unusual punishment, including the unnecessary and wanton infliction of pain. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)*, citing Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The prohibition against cruel and unusual punishment mandates that prisoners be afforded humane conditions of confinement and that they receive adequate food, shelter, clothing and medical care. *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). *See also Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999) (recognizing that "[t]he Constitution does not mandate comfortable prisons ... but neither does it permit inhumane ones"). A constitutional violation occurs only when two requirements are met. First, there is

the objective requirement that the condition "must be so serious as to 'deprive prisoners of the minimal civilized measure of life's necessities,' as when it denies the prisoner some basic human need." *Harris v. Angelina County, Texas*, 31 F.3d 331, 334 (5th Cir. 1994), *citing Wilson v. Seiter*, *supra,* 501 U.S. at 304. Second, under a subjective standard, the Court must determine that the prison officials responsible for the deprivation have been "deliberately indifferent to inmate health or safety." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). In applying this standard, the determinative question is whether the defendant prison officials subjectively knew that the inmate plaintiff faced a substantial risk of serious harm, yet disregarded that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan, supra*, 511 at 837. Specifically, prison officials must be shown to have been personally aware of facts from which an inference could be drawn that a substantial risk of serious harm existed, and they also must be shown to have drawn the inference. *Id.* While some conditions of confinement may establish an Eighth Amendment violation "in combination," when each would not do so alone, this will occur only when those conditions have a mutually enforcing effect that produces the deprivation of a single, identifiable human need. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists. *Wilson v. Seiter, supra*, 501 U.S. at 305. Further, conclusory allegations are not sufficient, and a plaintiff must present facts to support what are otherwise broad and conclusory allegations of wrongdoing. *See Rougley v. GEO Group*, 2011 WL 7796488, *3 (W.D. La. Nov. 7, 2011).

Applying the foregoing standard, the Court finds that Plaintiff has failed to make a showing sufficient to defeat Defendants' assertion of qualified immunity. In the first place, Plaintiff's pleadings provide only conclusory statements regarding his exposure to unreasonable extremes of

temperature, *i.e.,* to purported "100 degree heat in buildings with little ventilations and no fans, or air flow." In contrast, Defendants have presented sworn affidavits attesting that operational fans were situated at either end of the Camp J tiers to provide ventilation during the time in question, that there were louvered windows lining the tier hallways, that the regularly recorded temperatures on Plaintiff's tiers during the period of his confinement at Camp J Unit did not exceed 86 or 88 degrees Fahrenheit during the warmest months and were usually much lower,[1] that Plaintiff was allowed to shower daily, that he was provided with ice both at mealtimes and upon request, that he did not take medications or have any medical condition that would make him more susceptible to heat-related medical complications, and that he did not seek medical attention for any heat-related complaints during the pertinent time period. As discussed hereafter, this largely un-refuted evidence in the record constitutes a showing sufficient to compel a finding that Defendants may not be found to have been subjectively deliberately indifferent to a known risk of serious

---

1  *See* R. Doc. 43-6 *in globo*. It is interesting to note that the administrative grievance and letter written by Plaintiff to Warden Cain, complaining of the alleged extreme conditions at Camp J, was written on September 26, 2013, which date was only one day after his placement in a Camp J booth cell at the Gar Unit at LSP. Thus, his then-complaint about unconstitutional conditions and excessive heat in his Camp J booth cell was not based upon his having suffered such conditions for any period of time whatever. In addition, Plaintiff's complaint in the grievance and letter was about the conditions he was being subjected to while then housed at the Gar Unit, and Defendants have produced evidence reflecting that plaintiff was transferred to a different unit at Camp J -- Shark Unit -- on October 9, 2013, approximately two weeks later, and was housed at multiple different locations at Camp J during the ensuing year. *See* R. Doc. 32-11. It is entirely unclear whether all of these locations were "booth cells," of which Plaintiff specifically complained, or whether the cells to which he was assigned were nearer or farther from the ventilation fans that were located on each tier. An argument may be made that the only claim that Plaintiff has administratively exhausted, in accordance with 28 U.S.C. § 1997e, is his claim regarding the conditions to which he was subjected for the initial 2-week period at Gar Unit. Nonetheless, inasmuch as Plaintiff asserts that the booth cell to which he was thereafter assigned at Shark Unit was essentially similar to that which he had inhabited at Gar Unit, the Court will address Plaintiff's claim in this regard. Nonetheless, the Court notes that Plaintiff was transferred to a different camp entirely in October, 2014 -- Camp D at LSP -- and was thereafter no longer subject to the conditions of which he complains in this proceeding.

danger to Plaintiff's health or well-being or to have acted in an objectively unreasonable manner in addressing the conditions faced by Plaintiff at LSP.

Although exposure to extreme heat is actionable under certain circumstances, Plaintiff's allegations in this case, unsupported by anything more than conclusory assertions and photographs that do not substantively bolster his contentions, fall short of what is required to establish a constitutional violation, particularly in the absence of any probative evidence of actual harm or medical complications suffered by Plaintiff.  For example, in *Johnson v. Texas Board of Criminal Justice*, 281 Fed. Appx. 319 (5th Cir. 2008), the United States Court of Appeals for the Fifth Circuit addressed a similar claim and upheld a dismissal, as frivolous, of an inmate's lawsuit, finding that the plaintiff's allegations regarding extreme heat were "not sufficient to state a constitutional claim" because although he alleged that temperatures were "sometimes uncomfortably hot, he did not allege that he suffered from any heat-related injuries despite being subjected to these conditions numerous times." *Id.* at 321.  *See also Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir. 1995) (upholding summary judgment in favor of defendants where the inmate plaintiff alleged that excessive heat at Camp J at LSP aggravated his medical condition but where he "failed to present medical evidence of any significance" to support that assertion); *Ventry v. Gusman*, 2012 WL 1405862, *7 (E.D. La. March 29, 2012) (dismissing as frivolous an inmate's claim regarding uncomfortably hot conditions of confinement where his allegations "[fell] short of what is required to establish a constitutional violation" and where his claim regarding the aggravation of his medical condition was "speculative at best"); *Clark v. Gusman*, 2012 WL 1825306, *6 (E.D. La. March 29, 2012) (same).  Similarly, it has been held that purely conclusory allegations of excessive heat and inadequate ventilation, without more, fail to implicate a federal constitutional right.  *See Johnson v. Thaler*, 1999 WL 1131941, *1 (5th Cir., Nov. 12, 1999) (concluding that the inmate plaintiffs'

conclusory "allegations of inadequate ventilation and excessive heat do not entitle them to relief under 42 U.S.C. § 1983"); *Parker v. Smith*, 1994 WL 198944, *2 (5th Cir. May 6, 1994) (upholding the frivolous dismissal of a plaintiff's claim that "the ventilation system in the Smith County jail [was] inadequate").

In contrast to the foregoing, it is only where sufficient *evidence* has been presented regarding a serious potential risk of injury to the health of one or more *specific* inmates resulting from excessive heat that injunctive relief has been found to be warranted, and the form of such injunctive relief approved in the past has been similar to that which Plaintiff has been provided in this case, *i.e.,* fans, ice water, and daily showers.  See *Gates v. Cook*, 376 F.3d 323, 339 (5th Cir. 2004) (upholding a grant of injunctive relief to death row inmates at a Mississippi prison in the form of "extra showers, ice water, or [personal] fans ... when the heat index [was] 90 or above"). *See also Ball v. LeBlanc*, 988 F. Supp. 2d 639, 662 (M.D. La. 2013) (granting injunctive relief to death row inmates confined at LSP where the three plaintiffs suffered with medical conditions that made them more susceptible to heat, directing prison officials to formulate a plan "to reduce and maintain the heat index in the Angola death row tiers at or below 88 degrees Fahrenheit").[2]  *See also Blackmon v. Garza*, 484 Fed. Appx. 866, 870-72 (5th Cir. 2012) (reversing the grant of judgment as a matter of law in favor of defendants at the close of plaintiff's case at trial upon a finding that plaintiff's *evidence*, regarding heat indices, ineffective remedial measures, and

---

    2    On appeal, the United States Court of Appeals for the Fifth Circuit affirmed in part the lower court's decision to award injunctive relief but vacated and remanded the matter for further consideration, upon a finding that the injunctive relief awarded was over-broad.  *See Ball v. LeBlanc*, 792 F.3d 584 (5th Cir. 2015).  In doing so, the Court emphasized that the medical conditions suffered by the three inmate plaintiffs, together with their prescribed medications, made them more susceptible to heat and thereby entitled them to injunctive relief.  The Court declined to extend the same relief to all inmates subjected to the same conditions on the death row tiers and declined to find that air conditioning was a requirement to improve the plaintiffs' conditions of confinement.

aggravation of the specific plaintiff's medical condition, was potentially sufficient to support a verdict in his favor); *Valigura v. Mendoza*, 265 Fed. Appx. 232, 235-36 (5th Cir. 2008) (upholding the denial of a motion for summary judgment based upon qualified immunity where the plaintiff "present[ed] *evidence*" to support a potential Eighth Amendment violation in combination, including evidence that he was confined to a bunk for 24 hours a day for numerous consecutive days, was not allowed "to stretch his legs or get a drink of water," was not allowed daily showers, and was subjected to temperatures "above the eighties and into the hundreds" (emphasis added)). As specifically noted in *Gates v. Cook* and *Ball v. LeBlanc, supra,* the evidentiary basis presented in support of Plaintiffs' claims in those cases made their claims for injunctive relief distinguishable from, for example, the claim faced by the Fifth Circuit in *Woods v. Edwards, supra*, where the Court upheld the dismissal of a plaintiff's claim of excessive heat at LSP and where the plaintiff "had not presented medical evidence sufficient to state an Eighth Amendment violation" and had not presented evidence regarding "temperature data for his lockdown cell." *See Gates v. Cook, supra*, 376 F.3d at 339; *Ball v. LeBlanc, supra*, 988 F. Supp. 2d at 663-64.

In the instant case, there is nothing before the Court which tends to dispute Defendants' assertions regarding (1) the measures taken to combat potentially excessive heat on Plaintiff's housing unit, including ventilating fans, daily showers and access to ice at meals and upon request,[3] and (2) the absence of any prescribed medications or known medical conditions that made Plaintiff more susceptible to heat,[4] or (3) the absence of any showing by Plaintiff that he

---

3   Whereas Plaintiff asserts that he was not allowed to keep a cup in his cell, the affidavits of defendants Jimmy Smith and Robert Butler reflect that "[e]ach inmate is provided with one Styrofoam cup that they can keep at all times for drinking purposes; a plastic cup is provided during mealtime, which offenders must return."  *See* R. Docs. 43-3 and 43-4.

4   Although Plaintiff makes the conclusory assertion that he suffered with headaches, blurred vision, nausea and loss of appetite as a result of the conditions to which he was subjected, *see* R. Doc. 44 at p. 3 and R. Doc. 44-2 at pp. 19-20, there is no evidence that he sought medical

suffered any heat-related complications during the period of his confinement in a booth cell at LSP.  As noted above, the referenced remedial measures – ice, showers and fans – are similar to those found by the Fifth Circuit to be sufficient to ameliorate the adverse conditions faced by inmates in *Gates v. Cook, supra*.   Further, in contrast to inmates who are indefinitely confined on death row, as in *Gates v. Cook* and *Ball v. LeBlanc, supra*, Plaintiff's confinement in this case to a punitive booth cell at LSP's Camp J was for disciplinary reasons and so was of limited duration, and he did in fact earn a later transfer to less onerous housing conditions at Camp D through improved behavior.   Accordingly, Plaintiff has failed in this case to meet his burden of proof in addressing Defendants' assertion of qualified immunity and in opposing their assertion that they acted reasonably in response to the conditions alleged to exist on Plaintiff's cell tier.[5]   On the record before the Court, therefore, Defendants' motion is well-taken, and the Court concludes that they are entitled to summary judgment as a matter of law in connection with the claims asserted in this proceeding.   *See Hogan v. Prince,* 2016 WL 3579023 (M.D. La. May 17, 2016), *Magistrate Judge's Report adopted*, 2016 WL 3582075 (M.D. La. June 28, 2016) (granting summary judgment in favor of the defendants where the inmate plaintiff was provided with drinking water,

---

attention or made any sick call requests relative to these complaints.  Further, although Plaintiff makes a conclusory assertion that he was diagnosed with high blood pressure on one occasion in 2000, *see* R. Doc. 45-1 at p. 8, this assertion is entirely unsupported, and there is no evidence suggesting that Plaintiff was prescribed medication for this condition that made him more susceptible to heat-related complications during the pertinent time period.  In contrast to the foregoing, the affidavit of Dr. Randy Lavespere, attached to Defendants' Motion for Summary Judgment, *see* R. Doc. 43-5, reflects that Plaintiff did not seek medical attention for heat-related symptoms and "currently has no conditions that render him susceptible to heat, such as hypertension, nor did he suffer from any such condition in 2013."

     5     The Court further notes that Defendants have produced a certified copy of an audit conducted in August, 2013 for accreditation by the American Correctional Association, *see* R. Doc. 43-9 at p. 7, which audit concluded that the temperatures on the housing units at LSP, while warm, were acceptable, being "well within the normal comfort zone … [with] an ample supply of fans … in use to maintain air flow."

ice and showers daily and where he did not seek medical attention for heat-related complaints) *Porter v. Cain*, 2008 WL 5156443 (M.D. La. Dec. 5, 2008) (granting summary judgment in favor of the defendants where the inmate plaintiff complained of excessive heat at Camp J at LSP but failed to produce evidence to refute the defendants' evidentiary showing).[6]

## RECOMMENDATION

It is recommended that Plaintiff's Motion for Summary Judgment (R.Doc. 44) be denied and that Defendants' Motion for Summary (R. Doc. 43), be granted, dismissing Plaintiff's claims asserted against Defendants, with prejudice, and that this action be dismissed.

Signed in Baton Rouge, Louisiana, on August 18, 2006.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE** *JUDGE*

---

[6] Considering that Plaintiff was transferred from Camp J in October, 2014, his claim for injunctive relief relative to the conditions to which he was subjected at that location have been rendered moot. *See, e.g., Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (recognizing that an inmate's transfer normally "render[s] ... claims for declaratory and injunctive relief moot").